**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

GUY WILLIAMS,

      Plaintiff(s),

      v.

CITY OF TRENTON, TRENTON
POLICE DEPARTMENT, MR.
KENNETH LUGO,

      Defendant(s).

HONORABLE TONIANNE J. BONGIOVANNI
U.S. Magistrate


        CIVIL ACTION NO.
        3:11-cv-06352

---

**BRIEF IN SUPPORT MOTION FOR SUMMARY JUDGMENT ON
BEHALF OF THE DEFENDANTS**

---

## TABLE OF CONTENTS

**Page No.**

INTRODUCTION ...................................................................................................1

STATEMENT OF UNCONTESTED FACTS ........................................................3

LEGAL ARGUMENT.............................................................................................8

    POINT I ........................................................................................................ 8

        PLAINTIFF'S CLAIMS HEREIN ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS, AND, AS SUCH, MUST BE DISMISSED AS A MATTER OF LAW

    POINT II........................................................................................................ 10

        PLAINTIFF CANNOT SATISFY THE REQUISITE ELEMENTS OF A CAUSE OF ACTION FOR MALICIOUS PROSECUTION, AND, AS SUCH, DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

    POINT III ...................................................................................................... 12

        PLAINTIFF CANNOT SATISFY THE REQUISITE ELEMENTS OF A CAUSE OF ACTION FOR WRONGFUL ARREST, AND, AS SUCH, DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

    POINT IV ...................................................................................................... 20

        DETECTIVES LUGO AND MILES ARE ENTITLED TO QUALIFIED IMMUNITY, AND, AS SUCH, ALL CLAIMS AGAINST THEM MUST DISMISSED AS A MATTER OF LAW

    POINT V ........................................................................................................ 22

        THE CITY OF TRENTON IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

    POINT VI ...................................................................................................... 24

        AS PLAINTIFF'S §1983 CLAIMS FAIL, SO TOO MUST HIS CLAIM FOR VIOLATION OF THE NEW JERSEY STATE CONSTITUTION

    CONCLUSION .............................................................................................25

TABLE OF AUTHORITIES

**Page No.**

### Cases

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) ................................................... 10

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009)................................................................................... 22, 23

Baker v. Monroe Township, 50 F.3d 1186, 1193 (3d Cir. 1993) ................................................. 16

Bell Atlantic v. Twombly, 550 U.S. 544 (2007)......................................................................... 22, 23

Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987) ........................................................................... 8

Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989) ...................................... 8

Deary v. Three-Unnamed Police Officers, 746 F.2d 185, 197 N.16 (3d Cir. 1984)...................... 8

Delaware v. Prouse, 440 U.S. 648 (1979)..................................................................................... 15

Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002) ................................................................. 11

Genty v. RTC, 937 F.2d 899, 919 (1991) ..................................................................................... 8

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)........................................................................... 20

Hector v. Watt, 235 F.3d 154, 156 (3d. Cir. 2000)................................................................. 10, 11

Hilfirty v. Shipman, 91 F.3d 573, 579-80 (3d Cir. 1996)............................................................. 10

Hunter v. Bryant, 502 U.S. 224,228, 112 S.Ct. 534, 116 L. Ed. 2d 589 (1991).......................... 12

Illinois v. Gates, 462 U.S. 213, 230 (19893) .......................................................................... 13, 14

Illinois v. Wardlow, 528 U.S. 119, 123 (2000)............................................................................. 15

Johnson, supra. 592 F.3d at 447 .................................................................................... 15, 17, 18

Maryland v. Pringle, 540 U.S. 366, 371 (2003)............................................................................ 13

Monell v. Department Social Services, 436 U.S. 658, 691 (1978)................................................. 23

O'Conner v. City of Newark, 440 F.3d 125, 126-127 (3d Cir. 2006) ............................................ 8

Ornelas v. United States, 417 U.S. 690 (1996)............................................................................. 13

Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995) ..................................... 12, 13

Paff v. Kaltenback, 204 F.3d 425, 436 (3d Cir. 2000)................................................................. 13

Saucier v. Katz, 533 U.S. 194, 201 (2001) ................................................................................... 20

Sharrar v. Felsing, 128 F.3d 810, 18 (3d Cir. 1997)..................................................................... 12

Siegert v. Gilley, 500 U.S. 226, 232 (1991) ................................................................................. 20

Simmons v. Loose, 418 N.J. Super 206 (App. Div. 2010) ............................................................ 24

Smith v. Holtz, 30 F. Supp. 2d. 468, aff'd at 210 F.3d 186, 199-200 N. 18 (3d Cir. 2000)......... 12

Torres v. United States, 200 F.3d 179, 184 (3d Cir. 1999)........................................................... 20

Torres v. United States, 200 F.3d 197, 185 (3d Cir. 1999)........................................................... 16

Townes v. City of New York, 176 F.3d 1338, 1348 (2d Cir. 1999)............................................... 11

United States v. Brown, 448 F.3d 239, 246 (3d Cir. 2006) ........................................................... 17

United States v. Cortez, 449 U.S. 411, 417-18 .......................................................................... 18

United States v. Edwards, 53 F.3d 616, 619 (3d Cir. 1995) ......................................................... 15

United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984), cert. denied, 481 U.S. 1018 (1985)
............................................................................................................................................. 13

United States v. Johnson, 592 F.3d 442 (3d Cir. 2010) ................................................................ 14

United States v. Mosley, 454 F.3d 249, 253 (3d Cir. 2006) ......................................................... 15

W. Keeton, D. Dobbs, R. Keeton & D. Owen Prosser and Keeton on The Law of Torts 888 (5th
ed. 1984) ............................................................................................................................... 10

Wallace v. Kato, 549, U.S. 384, 297 (2007)................................................................................. 8

## **INTRODUCTION**

On Saturday, May 2, 2009, at approximately 9:25 p.m. Detective  Kenneth Lugo of the Trenton Police Department ("TPD") received a call from his then partner, Detective Sheehan Miles (off duty), advising that a Confidential Information ("CI") had contacted him and advised that there was a man with a gun walking on the 500 block of Hamilton Avenue in Trenton.  The CI described the suspect as a black male wearing jeans, an orange hat with the letter H on it, and a long sleeved orange shirt with a white tee shirt over it.  After alerting two other members of the "Quick Response Team" ("QRT") and responding to the area, Detective Lugo received a second call from Detective Miles who advised that he had received another call from the CI telling him that the suspect was then in the liquor store on Hamilton Avenue near Chambers Street.

Shortly thereafter, Detective Franicevich advised Detective Lugo that he had a visual on a black male matching the description given by the CI walking on Hamilton Avenue and that he had just entered the Food King Chinese Restaurant.  Detectives Franicevich and Lugo then entered the restaurant, noted that Guy Williams matched the description of the suspect to a "T" and each took hold of one of his arms and led him out of the restaurant.  Once outside, Detective Lugo began a "pat-frisk" of Mr. Williams, at which time Mr. Williams stated "it is in my pocket".   Detective Lugo first felt, and then removed a loaded revolver from his pocket.

At the result of the above, Guy Williams was charged with Unlawful Possession of Weapons (handgun) in violation of N.J.S. 2C:39-5B and Certain Persons Not To Have Weapons (Felon) in violation of N.J.S. 2C:39-7B.  Indictments were returned by a lawfully assembled Grand Jury relative to the charges, and Mr. Williams remained in jail pending Trial.  On the date of his Trial a Motion to Suppress the "fruits" of the aforementioned pat-frisk was brought.  That

motion was granted, the evidence suppressed and the indictments dismissed on motion by the Prosecutor.

The CI involved has never been named[1], although he was not an unknown or anonymous tipster.  Instead, both Detectives Lugo and Miles have testified that this CI had been utilized extensively by Detective Miles prior to the date of plaintiff's arrest and by Detective Lugo subsequent to the date of that arrest.  They both also testified that this CI had never provided inaccurate information to either of them and has been responsible for the arrest of numerous individuals for drug and weapons offenses.

Plaintiff brought the within action by the filing of a Complaint in the United States District Court, District of New Jersey, on October 31, 2011, well more than two years after his arrest and incarceration (5/2/09).  That Complaint initially alleged Malicious Prosecution against Detective Lugo, a "Monell" claim against the City of Trenton and violations of  Mr. Williams' New Jersey Constitutional rights against both defendants.  Plaintiff's counsel amended the Complaint nearly three and a half years after his arrest to add a Wrongful Arrest claim and  name Sheehan Miles as a defendant.

Defendants now move this Honorable Court for an Order granting Summary Judgment and dismissing plaintiff's claims with prejudice and without costs.

---

[1] Plaintiff's Motion to Compel his identity was recently denied.

## <u>STATEMENT OF FACTS UNCONTESTED FACTS</u>

Defendants herein, by way of Statement of Uncontested Fact, do hereby say:

1.   On November 5, 2009, Indictment No. 09-11-1101, captioned as <u>State of New Jersey v.</u> <u>Guy L. Williams</u>, was submitted to a Grand Jury by Cynthia Liccardo, Esq., Assistant Prosecutor appearing for the State of New Jersey.  *Atty. Cert. Exhibit "A".*

2.   Among the evidence submitted to the Grand Jury on that date was the testimony of Detective Kenneth Lugo, then a 22 year veteran of the Trenton Police Department. *<u>Id</u>. at p. 2.*

3.   His testimony at that time essentially confirmed what was in the police report.  *(infra.) <u>Id</u>* *at pp. 2-5;  Exhibit "Q".*

4.   Detective Lugo also testified that once Mr. Williams was transported to the Trenton Police Department it was determined that he did not have a permit to carry the unregistered handgun found in his possession. *<u>Id</u>. at p. 5.*

5.   His testimony further confirmed that a judgment of conviction in the matter of <u>State of</u> <u>New Jersey v. Guy Williams</u>, Indictment No. 06-10-1044, had resulted in Mr. Williams' prior guilty plea to Burglary, Third Degree pursuant to 2C-18-2(a)(1), a Felony. *<u>Id</u>. at pp. 6-7; Exhibit* *"E".*

6.   Based upon that, a two count indictment was proposed by the prosecutor charging Guy Williams with:  a) Unlawful Possession of Handgun, a second degree offense; and b) Certain Persons Not to Possess a Handgun (Felon), a second degree offense. *<u>Atty. Cert., Exhibit "A"</u> at* *pp. 5-7.*

7.   The Grand Jury returned an indictment on both of the aforementioned charges on November 5, 2009. *Atty. Cert., Exhibit "B".*

8.   Unable to make bail, plaintiff remained incarcerated at the Mercer County Correctional Facility until the date of his Trial.  *Atty. Cert. Exhibit "C",  pp 85-86.*

9.   At the time of Trial, a Motion was brought by Mr. Williams seeking to suppress the results of his pat-frisk outside the "Food King" Restaurant; the thrust of that Motion was that the CI providing the information leading to his stop and frisk was not sufficiently "reliable" to provide either "reasonable suspicion" or "probable cause".  *Atty. Cert., Exhibit "D".*

10. On April 11, 2011, the Honorable Edward F. Neafsey, J.S.C., held a hearing on plaintiff's Motion to Suppress evidence of the search, which included testimony from Detectives Lugo and Miles.  *Id*.

11. As a result of that hearing, the Court granted plaintiff's Motion to Suppress, and, shortly thereafter, with no evidence to support its case against the plaintiff, the Mercer County Prosecutor's Office submitted a Motion for Dismissal of the indictment, which was granted by the Court.  *Id*; Exhibit "F".

12. On October 28, 2011, the plaintiff initiated the within action by the filing of a Complaint in the United States District Court for the District of New Jersey (Trenton Vicinage), which Complaint sought damages pursuant to 42 U.S.C. §1983, and alleged causes of action defined therein as "Malicious Prosecution", "Civil Rights Violation – Monell", and a "State Constitutional Claim".  *Atty. Cert., Exhibit "G".*

13. On June 18, 2012, the plaintiff's counsel filed correspondence with this Court communicating, *inter alia*, his intention to file an Amended Complaint that would plead only a §1983 cause of action against defendants pursuant to the alleged violation of his client's 4th and 14th amendments related to his unlawful Search and Seizure.  *Atty. Cert., Exhibit "H".*

14. Correspondence was filed by counsel for the defendants herein with the Court on June 21, 2012, objecting to any amendment of the Complaint to reform or replead issues already set forth in the existing Complaint or set forth new causes of action.  *Atty. Cert., Exhibit "I".*

15. The Court subsequently issued an "Order on Oral Motion" dated June 25, 2012, indicating that plaintiff was to provide defendant with a copy of the Proposed Amended Complaint by July 5, 2012, and to file a Motion to Amend the Complaint no later than July 27, 2012, if counsel for the defense objected to any portion thereof.  *Atty. Cert., Exhibit "J".*

16. Counsel for the plaintiff did in fact provide my office with a copy of the proposed Amended Complaint within the time set forth by the Court; however, as I had suspected, plaintiff's counsel did not simply seek to shed existing causes of action, but sought to add Detective Sheehan Miles as a defendant and set forth a new cause of action sounding in "Wrongful Arrest".  *Atty. Cert., Exhibit "K".*

17. Plaintiff's counsel then filed a Motion seeking to amend the Complaint as stated and after careful consideration the defendants withdrew their objection to the motion, specifically reserving their rights relative to a Statute of Limitations defense.  *Atty. Cert., Exhibit "L".*

18. The deposition of the plaintiff was taken on June 19, 2012.  *Atty. Cert., Exhibit "C".*

19. During the course of that deposition the plaintiff testified that at the time of his arrest he was a member of the Crips.  *Id., at pp. 35-36.*

20. He also confirmed that he had been convicted or entered a plea of guilty to a felony charge prior to the date of his arrest.  *Id., at pp. 30, 76-77.*

21. At the time of his arrest he was in fact carrying an unregistered .22 caliber revolver loaded with six bullets without a "carry permit".  *Id., at pp. 44,46.*

22. Plaintiff responded to the Request to Admit served by the defendants admitting that at the time of his arrest he was carrying a concealed unregistered handgun without a permit, and that he was carrying same despite being a person who was not permitted to carry a weapon as a result of his prior felony plea. *Id., at p. "M".*

23. Plaintiff testified that on the evening of his arrest:  (a) he was advised by the police that he had been searched as a result of a tip provided by a CI; (b) he knew the identity of the CI immediately; and (c) told the officers that they were not getting a conviction as they had no "probable cause" to stop and "search" him. *Id., at p.72.*

24. After being assigned a Public Defender, plaintiff advised counsel that he needed to file a Motion to Suppress the evidence of the search due to a lack of Probable Cause for same; the Public Defender told plaintiff that it was a "waste of his time" and that he needed to find a "jailhouse lawyer" who could help him prepare the Motion on his own. *Id., at pp. 88-89.*

25. Plaintiff subsequently prepared that Motion on his own and sent a copy to his lawyer and to the Court, which resulted in the suppression hearing referenced above. *Id., at p. 89.*

26. The deposition of Officer Kenneth Lugo was taken on June 19, 2012. *Atty. Cert., Exhibit "N".*

27. He testified that on the night of plaintiff's arrest he, Detective Miles (off duty), Detective Yolanda Ward and Detective Franicevich comprised the Q.R.T. *Id., at p. 10-11.*

28. The CI providing the information upon which plaintiff's stop and search was based had long worked with Detective Miles, and at the time of plaintiff's stop Detective Lugo was aware that this CI had in the past provided Detective Miles with tips leading to the seizure of weapons and drugs and arrests based upon same. *Id., at pp. 16-17, 36-37; Exhibit "D", p. 15.*

29. Detective Lugo had met the CI on at least one occasion prior to the plaintiff's arrest, and subsequent to plaintiff's arrest he personally used that CI in the area of two dozen times; the CI never provided him with faulty information and his tips have led to the seizure of both drugs and weapons. *Atty. Cert., Exhibit "N", pp. 37-38.*

30. At the suppression hearing Detective Miles confirmed that he had received valuable information from this same CI on numerous occasions in the past, and that in 90-95% of those instances the information had resulted in arrests on weapons and/or drug charges. *Atty. Cert., Exhibit "D", pp. 20-22.*

31. Officer Sheehan Miles has also been deposed. *Atty. Cert., Exhibit "P".*

32. At that time he confirmed he had been working with the relevant CI for three to six months prior to the night in question, and that he had never provided him with inaccurate information. *Id. at pp. 22-23. 44-45.*

33. He confirmed the content of his supplemental report, but believed it had been prepared within a week of plaintiff's arrest, not a year and a half later as indicated. *Id. at pp. 28-29.*

34. He then explained that the original may have been "lost" in the system and the report we now have may have had to be regenerated by him at a later date. *Id. at p. 44.*

35. Officer Miles further testified that this CI has also provided information to both the DEA and the NJ State Police. *Id. at p. 47.*

36. In fact, it was his understanding that the N.J. State Police had recently used him to buy some high powered rifles and machine guns. *Id.  at pp. 49-50.*

For the reasons set forth more fully below we respectfully request that the Honorable Court grant defendants' Motion for Summary Judgment dismissing any and all claims against them with prejudice and without costs.

7

**LEGAL ARGUMENT**

**POINT I**

**PLAINTIFF'S CLAIMS HEREIN ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS AND MUST BE DISMISSED AS A MATTER OF LAW**

Actions brought pursuant to 42 U.S. §1983 are governed by the personal injury Statute of Limitations of the state in which the cause(s) of action occurred.  O'Conner v. City of Newark, 440 F.3d 125, 126-127 (3d Cir. 2006)(citing to Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).  For §1983 actions in New Jersey, "that statute is N.J.S.A. 2A:14-2, which provides that an action for injury to the person caused by wrongful act, neglect or default, must be convened with two years of the accrual of the cause of action".  Id. at pp. 125-127 (citing Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987)).  Federal law, which governs the accrual of §1983 claims, establishes that the limitations period begins to run from the time when the plaintiff knew or had reason to know of the injury which is the basis for the §1983 action.  Genty v. RTC, 937 F.2d 899, 919 (1991)(citing Deary v. Three-Unnamed Police Officers, 746 F.2d 185, 197 N.16 (3d Cir. 1984)).  The Supreme Court has held that "the Statute of Limitations upon a §1983 claim seeking damages for false arrest in violation of the *Fourth Amendment*, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process".  Wallace v. Kato, 549 U.S. 384, 297 (2007).

In the within matter, plaintiff was detained pursuant to legal process immediately following his pat-frisk and the recovery of the illegal handgun in his possession. At deposition he confirmed under oath that he was made aware that same night that he had been stopped, and frisked pursuant to information obtained from a CI.  Plaintiff further testified that that same night he believed he knew the identity of the CI, and told officers that they should not

have arrested him and would not get a conviction as they had no "probable cause" to stop and frisk him.  In short, plaintiff has conceded that he was aware of the alleged "wrongfulness" of his arrest on the very night it occurred.

Thereafter, immediately upon the assignment of a Public Defender, plaintiff advised counsel that he should file a Motion to Suppress the evidence obtained pursuant to his stop and frisk, as there was no probable cause for same.  When the Public Defender refused to do so, plaintiff prepared that Motion on his own and submitted it to the Court, leading to the suppression hearing ultimately resulting in the dismissal of all criminal charges against him. Consequently, it is clear that the causes of action alleged herein accrued on May 2, 2009, the night of plaintiff's arrest.

In the within matter, the plaintiff did not file the initial Complaint until October 28, 2011, more than five (5) months following the passage of the applicable Statute of Limitations. Thereafter, plaintiff did not file the Amended Complaint, first identifying Sheehan Miles as a defendant and setting forth a claim for False Arrest, until August of 2012, more then fifteen (15) months after the running of the applicable Statute of Limitations.  Consequently, we would submit that Summary Judgment must be granted as all claims herein are barred by Statute of Limitations.

## POINT II

### PLAINTIFF CANNOT SATISFY THE ELEMENTS OF A CAUSE OF ACTION FOR MALICIOUS PROSECUTION

The United States Court of Appeals for the Third Circuit has held:

> To prove malicious prosecution under §1983, plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

Even if the plaintiff in a malicious prosecution case can show that the defendant(s) acted maliciously and without probable cause in instituting a prosecution, it is always open to the defendant(s) to escape liability by showing in the suit itself that the plaintiff was in fact guilty of the offense with which he was charged.  Hector v. Watt, 235 F.3d 154, 156 (3d. Cir. 2000) (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen Prosser and Keeton on The Law of Torts 888 (5th ed. 1984) (in turn citing Restatement of Torts §657)).  This requirement can bar recovery even when plaintiff was acquitted in the prior criminal proceedings, for a verdict of not guilty establishes only that there was not proof beyond a reasonable doubt, not innocence.  Id.

The Third Circuit has found that "not all cases where the prosecutor abandoned its criminal charges are considered to have terminated favorably".  Hilfirty v. Shipman, 91 F.3d 573, 579-80 (3d Cir. 1996).  A plaintiff claiming malicious prosecution *must be innocent of the crime charged in the underlying prosecution*.  See, Hector, *supra.* 253 F.3d at 156 (finding that the suppression of evidence pursuant to an illegal search does not suggest that the plaintiff there was innocent of the criminal charges) (emphasis added).  See also, Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002) (finding that "[f]ar from indicating Donahue's innocence the Nolle Pros

merely reflected an informed and reasonable exercise of prosecutorial discretion as to how best to use those limited resources.  It does not suggest that Donahue was innocent of the remaining criminal charges")).

Further relevant here, "a plaintiff cannot recover the litigation expenses incurred because police officers discovered criminal conduct during an unconstitutional search."  Hector, *supra*., 253 F.3d at 157.  In so finding, that court cited a Second Circuit decision finding that "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all".  *Id*. (quoting Townes v. City of New York, 176 F.3d 1338, 1348 (2d Cir. 1999)..  As such, "damages for an unlawful search should not extend to post-indictment legal process, for the damages incurred in that process are too unrelated to the *Fourth Amendments* privacy concerns".  *Id*.

In light of the above, it is clear that the plaintiff can make no claim herein for malicious prosecution, as he has conceded that he was in fact guilty of both crimes forming the basis for his stop, search, arrest and prosecution.  In that regard, both at deposition and in response to the defendants' Request to Admit, plaintiff conceded that at the time of his arrest he was in possession of an unregistered handgun that he had no "carry permit" for, and that prior to that time he had been convicted of a felony precluding him from carrying such a weapon.  Consequently, plaintiff's claims in this regard must be dismissed with prejudice and without costs.

### POINT III

### PLAINTIFF CANNOT SATISFY THE ELEMENTS OF A CAUSE OF ACTION FOR WRONGFUL ARREST, AND, AS SUCH, DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

When officers are sued in their individual capacity, they are not generally considered in privity with the prosecutor in the previous action as they did not have a full and fair opportunity to litigate the issue during the suppression hearing.  See Smith v. Holtz, 30 F. Supp. 2d. 468, aff'd at 210 F.3d 186, 199-200 N. 18 (3d Cir. 2000).  In Smith, *supra.,* after reversal of the plaintiff's murder conviction, the plaintiff brought suit against a number of defendants involved in his conviction, including the State Police.  The plaintiffs thereafter sought to use offensive collateral estoppel to prevent the defendant officers from re-litigating the constitutionality of the arrest and search and seizure of the items from the plaintiff.  The Smith Court held that the State Court's decision in that regard could not be used to preclude the defendants from re-litigating the constitutionality of the arrest.  *Id.*

Probable cause for an arrest exists when the facts and circumstances within the officers' knowledge were sufficient to warrant a prudent man in believing a crime had been or was being committed.  Hunter v. Bryant, 502 U.S. 224,228, 112 S.Ct. 534, 116 L. Ed. 2d 589 (1991); Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995).  "[T]he determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene.  It is the function of the Court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense [had been] committed".  Sharrar v. Felsing, 128 F.3d 810, 18 (3d Cir. 1997) (quoting United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984), cert. denied, 481

U.S. 1018 (1985).  The Third Circuit has held that the lawfulness of a search must be examined independently from the lawfulness of the arrest.  Sharrar v. Felsing, *supra.* at 823.  Therefore, even if the search is found to be unlawful, this does not mean that the officers did not have probable cause to make the arrest at the time it was made.

While "[p]robable cause to arrest requires more than mere suspicion…it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."  Orsatti *supra*, 71 F.3d at 483.  The Third Circuit has held that a "common sense approach" based on the totality of the circumstances must be applied to determine whether there was probable cause to arrest.  Paff v. Kaltenback, 204 F.3d 425, 436 (3d Cir. 2000).  In determining whether an officer had probable cause for an arrest, a Court must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause".  Maryland v. Pringle, 540 U.S. 366, 371 (2003) (quoting Ornelas v. United States, 417 U.S. 690 (1996)).  When information from an informant is involved, "an informant's "voracity", "reliability" and "basis of knowledge" are highly relevant in determining the value of his report".  Illinois v. Gates, 462 U.S. 213, 230 (19893).  "[I]n making a warrantless arrest an officer may rely upon information received through an informant, rather than upon his direct observation, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.  *Id.* at 242 ("internal quotation marks omitted".) [2]

In the within matter, the "bona fides" of the CI have been established by the sworn testimony of Detectives Lugo and Miles.  In that regard, Detective Miles testified that prior to the

---

[2]     Moreover, even if there is no probable cause for an arrest, a plaintiff may only recover for physical damages or other damages related to invasion of privacy for the illegal search and seizure claim, not for damages arising from his prosecution.  See, Hector *supra*, 253 at 157.

arrest of the plaintiff on the night in question he had utilized information provided by this particular CI on hundreds of occasions, and that on 90-95% of those occasions the information had lead to seizure of both guns and narcotics and arrests related to same.  Similarly, Officer Lugo confirmed that he was aware at the time of plaintiff's search and arrest that the CI providing the critical information was a long time asset of Detective Lugo's and he had met him on at least one prior occasion.[3]  As such, the CI herein rises to the level accepted by our Supreme Court in Gates, *supra.,* and, consequently, "probable cause" for plaintiff's stop, pat-frisk and ultimate arrest was present on the night in question.[4]

Relative to the existence of "reasonable suspicion", we point to the Third Circuit's decision, in United States v. Johnson, 592 F.3d 442 (3d Cir. 2010), cert. denied 2010 U.S. LEXIS 4342 (U.S. May 24, 2010), where a woman called 911, provided her name, and told the police dispatcher she had heard a gun shot during an altercation between two men in a parking lot across the street from her house.  The caller then described the location of the parking lot, and while unable to describe in any detail the individuals involved in the altercation, she noted that the taxi appeared to be white – possibly with tan panelling – and had a green light on its roof.  While she was still on the phone, the tipster told the dispatcher that the taxi was departing from the parking lot and heading southbound on 7th Street.  That information was dispatched to Harrisburg police officers who spotted the taxi and initiated a traffic stop by blocking the taxi,

---

[3]    At deposition in this case, Officer Lugo confirmed that he has continued to utilize information from this source on numerous occasions since the time of plaintiff's arrest resulting in dozens of additional arrests and the seizure of narcotics and weapons related to same.

[4]    Additionally, reviewing information concerning the actual physical mechanics of the "search" it seems to be much more closely related to a *Terry stop and pat frisk*, which requires only "reasonable suspicion".  (*in fra.)*

approaching it with guns drawn, and handcuffing the occupants, subsequently finding a gun and drugs.

Reviewing the District Court's denial of the defendant's Motion to Suppress, the Third Circuit noted that the traffic stop of a motor vehicle is a seizure of the vehicle's occupants for purposes of the *Fourth Amendment*, and, as such, must normally be effectuated with a warrant based on probable cause.  Johnson, *supra*., 592 F.3d at 447 (citing Delaware v. Prouse, 440 U.S. 648 (1979), United States v. Mosley, 454 F.3d 249, 253 (3d Cir. 2006) and United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002)).   Under the well established exception to the warrant requirement set forth in Terry v. Ohio, 392 U.S. 1 (1968), however, "an officer may consistent with the *Fourth Amendment*, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot".  See also, Illinois v. Wardlow, 528 U.S. 119, 123 (2000).

Having ascertained the applicable standard, the Court addressed Johnson's first argument; namely that the officers in his case required "probable cause" for the search as the manner in which the stop was conduced transformed the encounter into a formal arrest. Rejecting this argument, the Court found that in certain circumstances it can be difficult to distinguish between a *Terry Stop*, which requires only reasonable suspicion, and a *de facto arrest*, which must be supported by probable cause.   Johnson, *supra*. 592 F.3d at 447-449 (internal citation omitted).  The Court did not, however, find Johnson's appeal to present such a case, as "the vast majority of Courts have held that police action in blocking a suspect's vehicle and approaching with weapons ready, and even drawn, does not constitute an arrest per se".  *Id*. (citing United States v. Edwards, 53 F.3d 616, 619 (3d Cir. 1995) (collecting cases)).  Nor does placing a suspect in handcuffs while securing a location or conducting an investigation

automatically transform an otherwise-valid stop into a full blown arrest.  *Id*. (citing <u>Baker v. Monroe Township</u>, 50 F.3d 1186, 1193 (3d Cir. 1993) (there is no per se rule that pointing guns at people, or handcuffing them, constitutes an arrest) and <u>Torres v. United States</u>, 200 F.3d 197, 185 (3d Cir. 1999) ("[I]n certain circumstances officers lawfully may handcuff the occupants of the premises while executing a search warrant")).

The Court found further reason to reject plaintiff's argument in the fact that the police did not question the taxi's occupants or check their identification before ordering them from the vehicle and handcuffing them.  <u>*Id*.</u> at 448.  Indeed, the Court referred to the Supreme Court's decision in <u>Terry</u>, where it held that it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties."  *Id*. (citing <u>Terry</u>, *supra*., at 392 U.S. at 23).  More particularly, it noted that the Supreme Court there held that:

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating…is armed and presently dangerous to the officer or others, it would ….be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.  <u>*Id*.</u> (citing <u>Terry</u> *supra* at 24.

The Court then noted that in the matter then before it Harrisburg police had acted on a credible tip that at least one of the taxi's occupants was armed and dangerous, and, therefore, the reasonable steps taken to insure the scene was secure before investigating further did not turn the Terry stop into an arrest.  *Id*.

Turning to whether the officers had "reasonable suspicion" to stop the vehicle in question, the Court indicated that had to consider the totality of the circumstances to determine whether "the detaining officers…[had] a particularized and objective basis for suspecting the particular person stopped of criminal activity."  <u>Johnson</u>, *supra*, 592 F.3d at 449 (citing <u>United States v. Brown</u>, 448 F.3d 239, 246 (3d Cir. 2006)).  Doing so the Court felt compelled to

scrutinize the informant's voracity, reliability, and basis of knowledge to determine whether the information relied upon by the police was sufficient to establish "reasonable suspicion" for the stop. _Id_. (internal citation omitted).  Factors to be considered in making such a decision include whether:  1) the information was provided to place a face to face interaction, allowing an officer to assess directly the informant's credibility; 2) the informant could be held responsible if the allegations weren't true; 3) the information would not be available to the ordinary observer; 4) the informant had recently witnessed the criminal activity at issue; and 5) the witness' information accurately predicted future activity. _Id_. (internal citation omitted).

Evaluating the totality of the circumstances then before it, the Court had little trouble concluding that the stop was supported by reasonable suspicion.  It found that Anderson -- an innocent, uninvolved bystander -- called 911 to report an ongoing altercation that involved gunfire.  While she did not speak face to face with an officer, she freely provided the police dispatcher with her name and telephone number, and the location of her home.  Those data points enhanced her credibility and the reliability or her report by allowing the police to hold her responsible if her tip ultimately proved to be false.  The Court also found it of critical import that she was reporting not just recent, but ongoing criminal activity she was observing during the pendency of the call and the distinctive characteristics of the taxi cab (green bubble on top), Id. The Court concluded that the witnesses tip, bolstered by the officer's independent corroboration of certain details, was sufficiently reliable to provide the police with reasonable suspicion that the occupants of the cab in which Johnson was riding had been involved in the shooting reported by the plaintiff.  Johnson, _supra_, 592 F.3d at 451.

We urge the Court here to recall that while the above enumerated factors are relevant to its analysis, no single factor is dispositive of or even necessary to render an informant's tip

reliable.  <u>Terry</u>, *supra*, at 213 ("[A] tip need not bear all of the indicia--or any particular indicia – to supply reasonable suspicion").  Thus, again, the Court must look to the totality of the circumstances to determine whether the CI in this matter had "sufficient indicia of reliability" to conclude whether Officer Lugo and the other members of the QRT possessed an objectively "reasonable suspicion" to justify the stop of the plaintiff herein.  <u>United States v. Cortez</u>, 449 U.S. 411, 417-18.

Off duty Officer Sheehan Miles received a tip from a CI that had provided accurate information leading to arrests and the seizure of weapons and drugs utilized on hundreds of occasions in the past.  He relayed this information to his partner, Detective Lugo, who was aware of the identity of Miles' informant and the credibility of past information supplied by same.  The initial description of the plaintiff was extremely detailed, indicating that he was a black male, wearing an orange long sleeved shirt with a white tee-shirt over it and an orange cap with the letter H on it, which description matched the plaintiff to a "T".  Finally, we note that like in the plaintiff in <u>Johnson</u>, *supra.* the CI here provided evolving information  on the plaintiff's location to Miles, which was relayed to Lugo.  Adding all of these factors together, as well as the observations of the officers on scene, clearly indicates that there was reasonable suspicion that the plaintiff was the individual in question and armed and dangerous.  Given that status, and the fact that he was approached in a public place, the fact that two of the officers gripped his arms and took him outside before patting him down does not transform this *Terry* stop into a *de facto* arrest.[5]  Consequently, we would respectfully submit to the Court that that the officers in

---

[5]     Also, note that the officers did not engage in any lengthy questioning of the plaintiff prior to his pat down.  Further, while they patted him down he volunteered that he had a handgun in his right front pocket.

question had reasonable suspicion to stop and "pat-frisk" the plaintiff herein, and, thereafter, probable cause to effect his arrest.

## POINT IV

**DETECTIVES LUGO AND MILES ARE ENTITLED TO QUALIFIED IMMUNITY, AND, AS SUCH, ALL CLAIMS AGAINST THEM MUST DISMISSED AS A MATTER OF LAW**

Under the Doctrine of Qualified Immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). See also, Torres v. United States, 200 F.3d 179, 184 (3d Cir. 1999); Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997). In order to determine whether an official is entitled to qualified immunity, the Court must answer the threshold inquiry: "[T]aken in the light most favorable to the party asserting the inquiry, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). Assuming this inquiry is satisfied and a constitutional right has been violated, it must then be determined whether the right violated was "clearly established". Id.

In the within matter, it is clear that plaintiff had a right to be free from unlawful search and seizure, and that Detective Lugo and his fellow officers can be charged with knowledge that they were required to have "reasonable suspicion" in order to stop and perform a pat frisk on him pursuant to the Court's ruling in Terry, supra, and probable cause to effect his arrest. However, we would submit to the Court that the determination of whether reasonable suspicion for a stop and frisk exists is a highly fact sensitive matter subject to considerable debate in almost any given circumstance. As such, in light of the above information regarding the identity and reliability of the informant, the detailed description of the suspect matching plaintiff exactly and

the evolving eyewitness tips being communicated by the CI to Miles and then onto Lugo, we would submit to the Court that no one could suggest that the Detective's conduct violated clearly established statutory or constitutional rights which a reasonable officer would have been aware of.  Consequently, we submit that all involved officers are entitled to Qualified Immunity relative to their good faith service on behalf of the citizens of the City of Trenton at the time of plaintiff's stop, frisk and ultimate arrest, which we remind the Court resulted in the removal of a firearm from a Crip member in a crowded restaurant.

## POINT V

## THE CITY OF TRENTON IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

In Count II of the Complaint (entitled – Civil Rights Violation – Monell) the plaintiff alleges that prior to the plaintiff's stop and arrest the City of Trenton and its police department "developed and maintained policies, practices and customs exhibiting deliberate indifference to the Constitutional rights of persons within the geographical and jurisdictional limits of that City", which caused violations of plaintiff's constitutional and other rights. That Count further alleges that the City of Trenton failed to adequately and properly supervise and train its officers in various aspects of law enforcement, criminal prosecution procedure and substance, including but not limited to, the nature and existence of good cause, probable cause and reasonable searches pursuant to the laws of the United States of America and State of New Jersey, and that such failure to train was the result of the City's deliberate indifference to the plaintiff's right resulting in the violation of those rights. At no point, however, does plaintiff ever name a supervisory officer, or final policy maker, whose negligence in failing to properly train Trenton police officers is the "moving force behind" or otherwise, responsible for this failure. Instead, plaintiff simply alleges that "defendants" failed to take appropriate action relative to the training and supervision of it's office in such a manner as to constitute deliberate indifference to the rights of the plaintiff.

In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) the United States Supreme Court made it clear that conclusory pleadings are no longer permitted in Federal Civil Rights actions. The plaintiff must allege a plausible claim for relief, and in the course of same establish factual predicates for the relief sought. Indeed the Iqbal Court reviewed its earlier decision in Bell Atlantic v. Twombly, 550 U.S. 544 (2007), and noted reviewing that it had there announced a

two (2) step process for evaluating a complaint.  First, a reviewing Court must examine each allegation of the Complaint and exclude from consideration those allegations that are stated in a "conclusory" fashion.  The Court suggested that all allegations that are mere "legal conclusions" or that are "thread bear recitals of the elements of a cause of action" will not suffice at the pleadings stage. *Id.* at 1949.

Here there are no specific facts which plaintiff Williams alleges to support the proposition that the City "failed to train or supervise" such as to give rise to a cause of action under <u>Monell v. Department Social Services</u>, 436 U.S. 658, 691 (1978).  Indeed, nothing in plaintiff's Complaint, nor the discovery conducted up to the current time, serves to provide any information concerning a specific policy or custom implemented by the City of Trenton causing the alleged damage to the plaintiff.  Instead, he make conclusory allegations that the decision of the officers involved who stop, pat frisk and ultimately arrest him were the result of the "deliberate" failings of the City of Trenton.  It is respectfully suggested that plaintiff's "proofs" articulated in the Complaint fail to meet the <u>Monell</u>, <u>Iqbal</u> and <u>Twombly</u> standards.[6]

For all of the foregoing reasons, even if the Court were to find some basis upon which to sustain his claims against the individual officers it cannot do so with respect to those claims directed at the City of Trenton.

---

[6]     Moreover, if there was no constitutionality defendant's action or in action by the arresting officers there can be no claim against the City.

## <u>POINT VI</u>

**AS PLAINTIFF'S §1983 CLAIMS FAIL, SO TOO MUST
HIS CLAIM FOR VIOLATION OF THE NEW JERSEY
STATE CONSTITUTION**

There is no reason to believe that the analysis of the alleged violation of plaintiff's rights under the Constitution of the State of New Jersey should be done independently, or involve any different factors than that relative to the allegations of violation of his rights under the United States Constitution.  Indeed, New Jersey Courts have often performed analysis of claims under these two separate documents as one, treating one no different than the other.  <u>See</u>, <u>Simmons v. Loose</u>, 418 N.J. Super 206 (App. Div. 2010).  Consequently, we would submit that pursuant to the analysis and argument set forth above plaintiff's claims under the New Jersey State Constitution must be dismissed as well.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, respectfully submit that Summary Judgment must be granted dismissing all of plaintiff's claims herein with prejudice and without costs.


Respectfully submitted,


*S/<u>J. BROOKS DIDONATO</u>*
J. BROOKS DIDONATO

Dated:  October 31, 2012