**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| GUY WILLIAMS | : | |
| | : | |
| Plaintiff, | : | No.: 11-cv-06352 |
| v. | : | |
| | : | |
| CITY OF TRENTON, et al | : | |
| | : | |
| Defendant | : | |

# ORDER

AND NOW this _____ day of _____, 2012 upon consideration of the Defendants, City of Trenton, Trenton Police Department and Officer Kenneth Lugo's Motion for Summary Judgment, and Plaintiff's response in opposition thereto, it is hereby ORDERED and DECREED that Defendants' Motion for Summary Judgment is hereby DENIED.

_____
Tonianne J. Bongiovanni                           ,J.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GUY WILLIAMS | : | |
| | : | |
| Plaintiff, | : | No.: 11-cv-06352 |
| v. | : | |
| | : | |
| CITY OF TRENTON, et al | : | |
| | : | |
| Defendant | : | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.   **Introduction**

Plaintiff, Guy Williams, opposes the Defendants' motion for summary judgment on the grounds that both Defendants, Lugo and Miles wrongfully arrested, searched and seized the Plaintiff upon false, misleading and incorrect information, purportedly provided to them by a mysterious CI.  Plaintiff spent nearly two (2) years incarcerated as the result of the search and seizure of the Plaintiff which the trial court, in Plaintiff's underlying case, determined lacked probable cause.  The trial court in the underlying case also found Defendants Miles and Lugo to be unreliable and, during a hearing on Plaintiff's motion to suppress, found their testimony not to be believed.  Defendants failed to even prepare an arrest report relating to Plaintiff until a few months prior to the motion to suppress hearing.

Defendant, City of Trenton is liable for Monell violations of Plaintiff's civil rights arising out of the complete institutional failure to require its officers to file arrest reports.  Defendants Lugo and Miles both testified at depositions that the computer system used by the City of Trenton is so woefully inadequate that many arrests have no corresponding paperwork.

As such, the motion for summary judgment filed by Defendants should be denied, and further, a lack of probable cause to arrest and seize the Plaintiff should be found as a matter of law based on principles of collateral estoppel.

## II.     Plaintiff's Opposition to Defendants' Statement of Uncontested Facts.

1-2.    Admitted.

3-4.    Denied.  The allegations set forth in paragraphs 3-4 are conclusions of law to which no response is required.  By way of further answer, Detective Lugo's testimony from the grand jury, from Plaintiff's motion to suppress hearing and from the deposition has been inconsistent. [Exh. A; Lugo Deposition Transcript] [Exh. C; Grand Jury Testimony].  The description of the Plaintiff on the night of the incident has changed, both Defendants have changed their testimony concerning their familiarity with the Confidential Informant ("CI"), the amount of times each had used the information attained from that informant and the reliability of that informant. [Exh. A] [Exh. B] [Exh. C] [Exh. D; Deposition Transcript of Defendant, Miles]. For that reason, Judge Neafsey in underlying criminal case captioned, State v. Williams, Superior Court of the State of New Jersey, Mercer County, Law Division, No. 09-11-1101, found that Defendant Lugo had no probable cause to arrest Mr. Williams and suppressed the weapon recovered from evidence in this case. [Exh. B at p. 55].  All charges against Plaintiff were dismissed. [Exh. E; Withdrawal of Charges].

5.      Denied.  The allegations set forth in paragraph 5 are conclusions of law to which no response is required.

6.      Admitted in part, denied in part.  It is admitted that Guy Williams was charged with a two-count indictment alleging unlawful possession of a handgun and certain persons not to

possess a handgun. [Exh. F]. By way of further answer, the remainder of these allegations from this paragraph are denied as conclusions of law.

7.    Admitted

8.    Denied.  The allegations set forth in paragraph 8 are conclusions of law to which no response is required.  By way of further answer, Plaintiff was incarcerated at the Mercer County Correctional Facility as a result of the Defendants' arrest of him without probable cause, giving rise to his incarceration.  It is admitted that Plaintiff remained incarcerated at the Mercer County Correctional Facility for more than one and one-half years until the charges against him were dismissed. [Exh. G; Deposition Transcript of Plaintiff, Guy Williams at p. 24] [Exh. B].

9.    Denied.  The allegations set forth in paragraph 9 are conclusions of law to which no response is required.  By way of further answer, it is hereby admitted that a motion was made by Plaintiff Williams on April 11, 2011 seeking to suppress the weapon allegedly confiscated by Defendant Lugo outside of the Food King Restaurant, and that the motion was granted as the Defendants had no reasonable suspicion or probable cause to arrest the Plaintiff. [Exh. B].

10-18.   Admitted.

19.   Admitted.  By way of further answer, this fact is wholly immaterial and irrelevant to the determination of summary judgment, and should be stricken from Defendants' moving papers.

20-22.   The allegations set forth in paragraphs 20-22 are conclusions of law to which no response is required.

23.   Admitted.  By way of clarification, it is admitted that Guy Williams was advised by the police that he had been searched as a result of a tip provided by the CI.  [Exh. G, at pp. 47-50]. It is further admitted that Plaintiff believed he knew the identity of the CI immediately, however based upon the testimony of Defendants Lugo and Miles it is believed that the identity of the CI

is different than the person whom Plaintiff believed to be the CI involved here, an individual named Bishop Minor. [Exh. D, p. 37] [Exh. A, p. 36]. By way of further answer, the remainder of this paragraph is admitted.

24-27.   Admitted.

28.   Denied. According to Defendant's Lugo and Miles, the confidential informant had provided information in ninety to ninety-five out of one hundred cases, yet failed to include such information in their original arrest report. [Exh. B, at p. 55] [Exh. H; Original Arrest Report]. The Court ruled that it did not believe that Defendant Lugo testified truthfully at the motion to suppress hearing and the Court ruled that it did not believe that the CI provided information for use in ninety to ninety-five out of one hundred cases. All of this information concerning the reliability of the CI was omitted from the original police report. [Exh. B, at pp. 55-57.]

29.   Denied. Detective Lugo has testified differently as to the identity of the CI, his recollection as to how many times he has used the CI, and his recollection as to how reliable the information has been and the tips he has obtained from the CI has led to the seizures of drugs and weapons. [Exh. B, at pp. 15-16] [Exh. A, at pp. 36-38].

30.   Denied. Testimony elicited by Detective Miles at his deposition as well as from the suppression hearing is inconsistent and reflects a lack of probable cause. [Exh. B, p.35] [Exh. D, p.45].

31.   Admitted.

32.   Denied. See Plaintiff's Answer to Defendants' Statement of Facts paragraph 30, as set forth above.

33-35.   Denied. The date of the supplemental report of Detective Miles was prepared more than one year and a half after the arrest of Plaintiff. [Exh. I; Supplemental Investigation Report]. Any

reason given by Defendant Miles as to why the arrest investigation report appears to have been prepared one year and a half later, is not credible. [Exh. B].

36.     Denied.  The facts set forth in paragraph number 36 are imprecise, however, if Defendants are referring to the CI, purportedly used by Defendants Miles and Lugo at the time of Plaintiff's arrest, it is admitted that Defendant Miles believes the New Jersey State Police has used him to buy high-powered rifles and machine guns.

### III.     Plaintiff's Statement of Undisputed Facts.

1.      On or about May 2, 2009, Plaintiff was at the Food King Restaurant in Hamilton, New Jersey. [Exh. G, p. 60].

2.      While he was eating, Plaintiff was approached by Defendant Lugo and two other officers, Detective Franecevich and Detective Yolanda Worth. [Exh. G, p. 62].

3.      Defendant Lugo and Detectives Franecevich and Worth grabbed Plaintiff by his arms and led him outside the restaurant without saying a word. [Exh. G, pp. 64-66]. At that point, Lugo demanded to see the inside of Plaintiff's jacket, as he was patting Plaintiff down. [Exh. G, p. 65].

4.      Plaintiff complied and showed Defendant Lugo the inside of his jacket.

5.      Defendant Lugo said "where is it?" [Exh. G, p. 65].

6.      Defendant Lugo was referring to a .22 caliber pistol in Plaintiff's pocket -- Plaintiff produced the weapon. [Exh. G, p. 66].

7.      Defendant then arrested Plaintiff and charged him with illegal possession of a firearm.

8.      Plaintiff was intentionally targeted by Defendants after Defendants received an anonymous telephone tip that Plaintiff was eating at the diner, and that he was in possession of a firearm. [Exh. B].

9. Plaintiff was then indicted on or about November 9, 2009 more than six months from the date of his arrest. [Exh. F].

10. Plaintiff was then held in the Mercer County Jail until April 15, 2011. [Exh. B].

11. Plaintiff appeared in Court for his trial on April 15, 2011. [Exh. B].

12. At the beginning of his trial, Plaintiff, who was represented by a public defender, initially moved to suppress the confiscated firearm as evidence because it was "fruit of a poisonous tree, i.e., Defendants had no probable cause to search and seize Plaintiff based upon an anonymous telephone tip." [Exh. B].

13. Plaintiff's Motion to Suppress was granted, and therefore the charges were dismissed. [Exh. B].

14. Detective Miles testified in a hearing on April 11, 2011. [Exh. B, pp. 16-37].

15. He specifically testified that Plaintiff, Guy Williams was identified by his confidential informant as wearing an orange hooded sweatshirt. (Exh. B, pp. 27-28.)

16. In the police report prepared on December 1, 2010 (almost a year and a half after Plaintiff's arrest, on May 2, 2009) [Exh. I], Miles swore that his "C.I. described the individual as a black male wearing an orange colored hat with the letter "H" on it and a long-sleeve shirt with a white T-shirt over it and jeans." [Exh. B, p. 28].

17. It is undisputed that at the time the Plaintiff was grabbed and led out of the restaurant by Defendants, he was not doing anything visibly illegal. [Exh. A, p. 44].

18. It is undisputed that he was sitting down eating dinner. [Exh. A, p 44].

19. Detective Miles supposedly obtained information from a CI that a person matching a description of the Plaintiff was in possession of an unlicensed firearm.

20. Miles found this C.I. to be extremely reliable, and stated that 90 to 95 % of the time, this C.I. provided information leading to an arrest. [Exh. B, pp. 52-53].

21. Miles also testified that he did not set forth this information in his report because he did not believe the information to be essential or important. Miles then testified that this C.I. had never provided unreliable information. [Exh. B, pp. 55-56].

22. The Court found Miles testimony to be unbelievable. [Exh. B, pp. 55-56].

23. Defendant Miles then purportedly relayed that information to Lugo who found Plaintiff in the restaurant and approached him, grabbed by the arms and led him out of the restaurant.

24. Once outside the restaurant, the Defendants performed a pat frisk upon the Plaintiff. [Exh. B, pp. 51-52].

25. Plaintiff was indicted for weapons charges as a result of the illegal search and seizure, and a motion to suppress was filed prior to the police report was drafted by Detective Miles. [Exh. B, pp. 37-40].

26. The Motion to Suppress was denied for several reasons, not the least of which being that the Court did not believe the officers were testifying truthfully concerning the matter. [Exh. B].

27. Plaintiff was incarcerated from May 2, 2009, until April 15, 2011.

## IV.  Legal Argument.

### 1.  Legal Standard.

To prevail in a Section 1983 action, a plaintiff must establish (1) that the conduct constituted state action or action committed while acting under color of law and (2) that the conduct deprived an individual of rights, privileges, or immunities secured by the constitution or laws of the United States. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1264 (3d

Cir.1994); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1142 (3d Cir.1990). 42 U.C.S. § 1983 does not create substantive rights. Rather, it provides an avenue of recovery for the deprivation of established constitutional or statutory rights. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause. Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995). Probable cause to arrest exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. Id. at 483; United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir.1990) (citation omitted), cert. denied, 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991); United States v. Massac, 867 F.2d 174, 175 (3d Cir.1989).

A police officer who arrests an individual without probable cause may be liable for damages in a civil rights suit. Id.; Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). However, police officers, like other governmental officials, are protected from liability for civil damages where their conduct in performing a discretionary function does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Orsatti, 71 F.3d at 483.

In order to prevail on a wrongful arrest/wrongful seizure claim, Plaintiff must show [A] plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statement or omissions are material, or necessary, to the finding of probable cause.' Wilson v. Russo, 212 F.3d 781, 786-87

(3d Cir.2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir.1997)). A misstatement or omission is material if, after correction of the misleading statements (or insertion of the omitted information), the affidavit would no longer establish probable cause. Wilson, 212 F.3d at 789.

There is ample evidence for Plaintiff to prevail on both claims (malicious prosecution and wrongful arrest) against both Defendants Miles and Lugo.

**2.     Pursuant to the doctrine of collateral estoppel, Defendants lacked probable cause to stop, arrest, seize and prosecute Plaintiff.**

Collateral estoppel, or issue preclusion, bars "relitigation of a particular fact or legal issue that was litigated in the earlier action." Seborowski v. Pittsburgh Press Co., 188 F.3d 163, 169 (3d Cir.1999) (citing Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979)). It applies when the factual or legal issue in the second case is identical to that in the first case, there is a final judgment on the merits, and "the party against whom the doctrine is asserted [was] a party or in privity with a party to the prior adjudication and had a full and fair opportunity to litigate the issue in question in the prior action." Seborowski, 188 F.3d at 169 (citing Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 548 (3d Cir.1996)).

Further, the doctrine of res judicata also bars the relitigation of any issue concerning whether the Defendants had probable cause to search and seize the Plaintiff at the time of the arrest.

Under federal law, res judicata prohibits a party from reopening and relitigating issues that were or could have been decided in a previous case involving the same parties, or those in privity with them, arising out of the same transaction. There are three elements to claim preclusion: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and

(3) the same parties or their privies." EEOC v. United States Steel Corp ., 921 F.2d 489, 493 (3d Cir.1990). See also Federated Dep't Stores v. Moitie, 452 U.S. 394, 398 (1981). Res judicata precludes claims that were determined in the earlier action as well as ones that could have been determined. Angel v. Bullington, 330 U.S. 183, 192–93 (1947).

Here, the issue of whether Defendants had probable cause to stop, seize and arrest the Plaintiff is already decided and Defendants are barred from relitigating that issue here. Defendants Lugo and Miles had full and fair opportunity to litigate the issue of probable cause at the motion to suppress hearing. [Exh. B]. Both Defendants testified concerning the events leading up to the stop of the Plaintiff, and the trial court held that the Defendants lacked probable cause to stop and seize the Plaintiff based solely on the unreliable and incredible testimony of both Defendants. The trial court very bluntly stated on the record that the court found the testimony of both Defendants not believable. The court then suppressed the firearm from evidence. [Exh. B].

**3.      Even if not barred from re-litigating the issue of probable cause, Defendants' motion still fails.**

      **A.      Defendants lacked probable cause.**

Here, Defendants Lugo and Miles unlawfully arrested Plaintiff in violation of his 4th Amendment right guaranteeing Plaintiff the right to be free from unreasonable seizures. Maples v. City of Atlantic City, 2008 WL 2446825 (D.N.J.,2008).

Plaintiff alleges that the individual Defendants committed a constitutional violation by unlawfully stopping, seizing, searching and arresting him. An arrest is unlawful and, thus, actionable if it is effectuated without probable cause. Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir.1978). Probable cause exists when the facts are such that a reasonably prudent person would believe that a crime had been committed. Gerstein v. Pugh, 420 U.S. 103, 111, 95 S.Ct. 854, 43

L.Ed.2d 54 (1975).  Thus, the question this Court must determine is whether the facts available to Lugo and Miles, at the time of arrest would warrant a reasonably prudent person to believe that Willimas had committed these violations.  Beck v. State of Ohio, 379 U.S. 89, 98, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ("[w]hen the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed") (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).

  The determination of whether an officer had probable cause to arrest a citizen involves a mixed question of fact (the historical events that occurred) and law (whether the facts, viewed from the standpoint of an objectively reasonable officer, amounts to probable cause).  Gardenhire v. Schubert, 205 F.3d 303 (C.A.6 2000).  In general, the existence of probable cause in a § 1983 action is a jury question.  Id.; Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782 (C.A.3 2000).

  The common law presumption raised by a magistrate's prior finding that probable cause exists does not apply to § 1983 actions.  Merkle, supra.  Conflicting statements, by themselves, create a genuine dispute of material fact and of credibility that can only be resolved by the jury.  Wallis by and through Wallis v. Spencer, 193 F.3d 1054 (C.A.9 1999).

  On summary judgment on claim that a police officer knowingly or recklessly gave false information to obtain an arrest warrant, Court must disregard all properly contested statements in the affidavit, include relevant exculpatory evidence left out of the affidavit, and then determine whether the warrant would establish probable cause without the allegedly false information.  Freeman v. County of Bexar, 210 F.3d 550 (C.A.5 2000).  Plaintiff must then demonstrate an issue of material fact as to whether a reasonably competent officer, possessing all the

information defendants had when the affidavit was sworn to, could have concluded that a warrant should issue.  Id.  Court must look at the totality of the circumstances as they appear to defendants at the time to determine whether probable cause exists.  Id.

A Fourth Amendment violation may be established if a plaintiff can show that officers intentionally or recklessly omitted material, exculpatory facts from information presented to a magistrate.  Burke v. Town of Walpole, 405 F.3d 66 (C.A.1 2005).  Recklessness may be inferred where the omitted information was critical to the probable cause determination.  The law has clearly established that a police officer has a constitutional duty to disclose exculpatory evidence in seeking warrants based on probable cause, and an officer who failed to do so was not entitled to qualified immunity.  Id.

Here, the entire controversy relates to what the CI supposedly explained to Miles over the phone and then the information Miles communicated to Lugo.  As set forth above, the facts relayed to Lugo and Miles by the CI changed depending on when each Defendant was testifying, and were critically different from the time of arrest to the time when the Defendants finally testified at the suppression hearing. Further, Plaintiff attempted to obtain and subpoena the testimony of this CI to determine the information that he or she provided to the Defendants, but the Defendants succeeded in not disclosing that person's identity.  Finally, the trial court in the underlying case found the Defendants were simply not credible and their information that they purportedly used in arresting the Plaintiff was not be believed, and as such, Defendants' motion for summary judgment.

      **B.**    **Defendants are not entitled to any qualified immunity.**

In recognition of the complex task performed by law enforcement officials, the Supreme Court has held that officers are entitled to a qualified immunity from civil liability under 42

U.S.C. § 1983.  See Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  In Harlow, the Court stated that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Id. at 818, 102 S.Ct. at 2738.  Immunity from civil liability obtains so long as official "actions could reasonably have been thought consistent with the rights they are alleged to have violated."  Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).  The Supreme Court's decisions place a special emphasis on the reasonableness of an officer's actions, requiring courts to make an objective inquiry into the facts facing the officer at the time of the alleged improper act.  See Harlow, 457 U.S. at 815-19, 102 S.Ct. at 2736-39.  The objective nature of the inquiry is designed both to limit exhaustive inquiries into an individual officer's subjective state of mind, id. at 816-17, 107 S.Ct. at 3034-38, and to safeguard the general interests of law enforcement from the intrusions of extended litigation, see Hunter v. Bryant, 502 U.S. 224, ----, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

Because of these concerns, courts reviewing questions of qualified immunity should attempt to put themselves in the place of the officers at the scene and view events as "a police officer acting reasonably under the circumstances should have perceived [them]."  Sevigny v. Dicksey, 846 F.2d 953, 957 (4th Cir.1988).  The crucial question is not what hindsight may uncover, but what information the officers had in hand or could reasonably be expected to possess.  Because police officers are regularly forced to make critical decisions under extreme time pressure-decisions which may seem much easier after facts have unfolded and time for reflection has been afforded-reasonable judgments which turn out to be mistaken are nonetheless entitled to protection.

The parameters for the qualified immunity inquiry, established by the Supreme Court, are of great benefit to the inquiry here concerning qualified immunity. This case did not involve any time pressure decisions needed to be made by the Defendants at issue. This is a case where (even believing the Defendants, something the trial court said was impossible) a CI contacted Defendant Miles about an individual carrying a gun on his way to eat dinner. Defendant Miles then immediately contacted Defendant Lugo who carried out the seizure and arrest of the Plaintiff.

An important distinction involves the lack of exigent circumstances in this action. The latitude accorded police conduct is inescapably influenced by the need for prompt action in the interest of personal or public safety. Taylor v. Farmer, 13 F.3d 117, 121 (4th Cir 1993). Again, even if we believe the Defendants, this is a case of a Plaintiff being escorted out of a chinese food store while he was sitting down, eating his dinner.

This is not a case involving exigent circumstances when police officers hear a blood chilling scream from inside a house and are forced to take action based on their perception that something illegal and possibly dangerous or harmful is happening. This case does not involve a suspect who is a flight risk.

A thorough review of the record demonstrates that Defendants Lugo and Miles were not acting in an objectively reasonable manner with regard to Plaintiff's Fourth Amendment rights to be free from an unreasonable seizure, lacking probable cause.

### 3.   Defendant, City of Trenton is liable to Plaintiff.

The City of Trenton cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior. See Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, a Plaintiff must demonstrate that the

violation of his rights was caused by either a policy or a custom of the municipality. See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.1996).

Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir.1996). Customs are practices of state officials ... so permanent and well settled as to virtually constitute law. Id. (quoting Monell, 436 U.S. at 691, 98 S.Ct. 2018). If a § 1983 plaintiff identifies a municipal policy or custom, he must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). If, as here, the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice. Id. at 407, 117 S.Ct. 1382 (citations omitted); see also City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

The faulty computer system utilized by City of Trenton made it impossible for Miles and Lugo to access their original arrest reports in this case, which both claim were lost. [Exh. D, p. 40]. Defendant Miles specifically testified that the Trenton District Attorney's Office came looking for arrest reports which were "lost in cyberspace." [Id.] Further, the purported CI utilized by Defendants was either paid by the City of Trenton for providing information or was "working off charges" meaning that he was providing the Defendants with information in exchange for the dismissal of his own criminal activity. [Exh. D, pp. 49-51]. Again, Defendants have successfully prevented the Plaintiff from taking discovery to determine the identity of this

CI to find out exactly what he purportedly told Defendants Lugo and Miles and whether he was being paid cahs for this information or whether his own criminal activity was getting a pass by the Defendants. Both the computer system issue and the method in which the CIs were providing information created the constitutional violation suffered by Plaintiff.

    **4.**  **Plaintiff's claims are not barred by the Statute of Limitations.**

As an initial matter, Plaintiff's malicious prosecution claim did not even accrue until April 15, 2011 when the charges were disposed of in his favor, as such, the filing of the Complaint, in October 2011 adequately tolled the two year statute of limitations.

Plaintiff was unlawfully arrested on May 2, 2009. Plaintiff was jailed and finally indicted on November 5, 2009, and, as such Plaintiff was not even charged with a crime until six (6) months after his arrest, hence a continuing violation of Plaintiff's rights, to be free from wrongful arrest. Both defendants took actions long after the arrest in continuous violation of Plaintiff's rights. Defendant Lugo testified on November 5, 2009 before the Grand Jury. Defendant Lugo testified on April 11, 2011 at the suppression hearing of Plaintiff. Defendant Miles created an arrest report on December 1, 2010 detailing his contacts giving rise to Plaintiff's arrest and seizure. Defendant Miles also testified at the suppression hearing on April 11, 2011. The continuing violation doctrine is based on the affirmative acts of the Defendants, Miles and Lugo and as set forth herein, each Defendant affirmatively acted to continue the constitutional violation. Young v. Allentown, 882 F.Supp. 1490, FN7 (E.D.Pa. 1995) (a Plaintiff must allege at least one violation not time barred by the statute of limitation to assert continuing violation exception).

**V.	Conclusion.**

In light of the foregoing and in light of the record evidence submitted in this matter, Plaintiff respectfully requests this Honorable Court deny the Defendants' motion for summary judgment.

                                        **WEISBERG LAW, P.C.**

                                        /s/ Graham F. Baird
                                        Matthew B. Weisberg, Esquire
                                        Graham F. Baird, Esquire
                                        Attorney for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GUY WILLIAMS | : | |
| | : | |
| Plaintiff, | : | No.: 11-cv-06352 |
| v. | : | |
| | : | |
| CITY OF TRENTON, et al | : | |
| | : | |
| Defendant | : | |

### CERTIFICATE OF SERVICE

I, Graham F. Baird, Esquire, hereby certify that on this 3rd day of December, 2012, a true and correct copy of the foregoing Opposition to Defendants' Motion for Summary Judgment was served via ECF upon the following parties:

J. Brooks DiDonato, Esq.
Parker McCay P.A.
9000 Midlantic Drive, Ste. 300
P.O. Box 5054
Mount Laurel, NJ 08054


**WEISBERG LAW, P.C.**


/s/ Graham F. Baird
Matthew B. Weisberg, Esquire
Graham F. Baird, Esquire
Attorney for Plaintiff