## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GUY WILLIAMS,<br><br>　　　Plaintiff(s),<br><br>　　　v.<br><br>CITY OF TRENTON, TRENTON POLICE DEPARTMENT, MR. KENNETH LUGO,<br><br>　　　Defendant(s). | HONORABLE TONIANNE J. BONGIOVANNI<br>U.S. Magistrate<br><br><br>CIVIL ACTION NO.<br>3:11-cv-06352 |

**BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**RESPONSE TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNCONTESTED FACTS** ............................................................................... 1

**RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACT** ........................... 2

**COLLATERAL ESTOPPEL** ............................................................................... 3

**PROBABLE CAUSE** ............................................................................... 3

**QUALIFIED IMMUNITY** ............................................................................... 5

**MONELL LIABILITY** ............................................................................... 6

**STATUTE OF LIMITATIONS** ............................................................................... 6

**CONCLUSION** ............................................................................... 8

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Cady v Dombrowski*,
    413 U.S. 433 (1973),................................................................................................... 7

*Hector v Watt*,
    235F. 3d 154-156 (3d Cir. 2000). ................................................................................ 10

*Sevigny v Dickicy*,
    840 6F. 2d 953, 957 (4th Cir. 1988). ............................................................................ 8

*Smith v Holtz*,
    30 F. Supp. 2d 2D.468, Aff'd at 210F. 3d 3D 186, 199-200 N. 18 (3rd Cir. 2000). ........... 6

*Taylor v Farmer*,
    13F. 3d 117, 121 (4th Cir. 1993). ................................................................................ 8

## RESPONSE TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' STATEMENT OF UNCONTESTED FACTS

Counsel for the plaintiff repeatedly objects to Statements of Material Fact contained in the Defendants' brief by stating that same are "Conclusions of Law" when they are not. Plaintiff's counsel also makes reference to other objections to which no response is required. Defendants will respond only to those Paragraphs they believe require same.

3. The police report speaks for itself, as does the testimony of Detective Lugo, both at deposition and before the Grand Jury.

4. Plaintiff's counsel fails to provide any information contradicting the fact that his client was illegally in possession of an unregistered handgun on the night in question.

5. Plaintiff's counsel denies the factual allegations of this Paragraph; however, he does not dispute that his client was a convicted felon on the date of his arrest, and, as such, that it was illegal for him to carry a handgun in the State of New Jersey, registered or unregistered.

20. - 22. All of these facts are central to the predicate for Defendants' motion for summary judgment herein. It is unknown how these Statements of Fact are "Conclusions of Law".

28. Whether Defendants, Lugo and/or Miles utilized the CI in question tens of times, dozens of times or a hundred times is irrelevant; the uncontested fact is that he had been utilized by Detective Miles successfully on repeated occasions prior to the date of the plaintiff's arrest.

29. Detective Lugo never testified as to the identity of the CI, much less testified "differently" as to same. It is not contested that on two occasions separated by well over a year Detective Lugo testified differently as to the exact number of times Detective Miles had utilized this particular CI. It is uncontested that Detective Miles had used information from him on prior occasions.

2

**RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACT**

    1. - 14.  Admitted.

    15.    It is admitted that Detective Miles was not properly prepared by the Prosecutor for the "Suppression" hearing.  It is uncontested that on the night of plaintiff's arrest the unnamed CI gave him a description of the plaintiff that matched his actual appearance.  Specifically, he was wearing an orange long-sleeved shirt with a white short sleeve t-shirt over it and an orange hat with the letter "H" on it.  We submit to the Court that whether the orange t-shirt under the white one was a "hoody", a crew neck or v-neck is irrelevant to the effectiveness of the description of the assailant.

    17.    Admitted.

    19. - 25.  Admitted.

    26.    The motion to Suppress was granted.

    27.    Admitted.

## COLLATERAL ESTOPPEL

For the reasons set forth more fully in the Brief submitted by Defendants in support of their motion for summary judgment, the doctrine of Collateral Estoppel is inapplicable to the issues herein. See, Smith v Holtz, 30 F. Supp. 2d 2D.468, Aff'd at 210F. 3d 3D 186, 199-200 N. 18 (3rd Cir. 2000). Specifically, a state Court's decision that probable cause for an arrest did not exist does not preclude Defendants from re-litigating the constitutionality of that arrest in a subsequent civil action. Id.

## PROBABLE CAUSE

Initially, we note that "Probable Cause" is not the applicable standard for the Court herein as the gun was found not during a "search", but during a "pat-frisk". See, Terry v Ohio, 392 U.S. 1 (1968) (When an officer is justified in believing that an individual he is investigating at close range is armed and presently dangerous to the officer or to others, it is clearly unreasonable to deny the officer the power to take the necessary measures to determine whether the person is carrying a weapon and to neutralize the treat of physical harm.) See also, Plaintiff's Statement of Undisputed Facts, Paragraph 24 ("Once outside the restaurant, the Defendants performed *a pat-frisk* upon the plaintiff).

With that said, it is clear that Defectives Lugo, Franecevich and Worth had both "reasonable suspicion" to pat plaintiff down, and, thereafter, Probable Cause to arrest him. They received an initial call from a trusted Confidential Informant through Detective Miles that an individual matching plaintiff's description was located on Hamilton Avenue in Trenton, New Jersey. As they proceeded to that location, they received an update from the CI regarding plaintiff's changing location. Converging upon the area, the Detectives were quickly able to identify the plaintiff, approach him and neutralize the threat posed by the firearm in his

3

possession. To force the officers to have questioned plaintiff in a crowded restaurant without having first determined if he was armed and to remove the weapon if so would be unconscionable.

In addition to the above rationale, we note that the Supreme Court of the United States in Cady v Dombrowski, 413 U.S. 433 (1973), first recognized the Community Caretaking exception to the need for a warrant to conduct a search when officers are presented with a situation presenting a danger to the surrounding community. There a Chicago police officer named Dombrowski visiting Wisconsin reported that he had been in an automobile accident. The police picked him up and returned to the scene of the accident where it became apparent that he was intoxicated and was offering conflicting versions of the accident. At that time, he advised the local officers that he was a Chicago police officer, and those officers, believing that members of the Chicago police force were required to carry a service revolver at all times, searched him and the car without first applying for or obtaining a warrant. Clearly, there is a far greater expectation of privacy in one's vehicle than one's person when in a public place.

The Supreme Court subsequently upheld the appropriateness of the search, finding that the effort to find the weapon was motivated by the obligation of the police "to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands". Cady, *supra*., 413 U.S. at 443. The Supreme Court further upheld the search on the ground that it was permissible because it was the result of a policer officer's Community Caretaking function, "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute". Id. at 441.

Cady may not be directly on point, but the language is persuasive. Here, police were dealing with the possession of an unregistered handgun by a convicted felon in a public place,

4

and consequently, *had to* move swiftly to "protect the public" from the obvious threat presented by same. The officers had no way of knowing whether plaintiff was about the rob the Food King, shoot someone located therein or leave the premises to commit some other crime with the handgun.[1]

## QUALIFIED IMMUNITY

I find it interesting that plaintiff's counsel's brief cites extensively to case law that clearly justifies application of the Qualified Immunity doctrine to Detectives Lugo and Miles. Specifically, he notes that a Court reviewing a question of Qualified Immunity should attempt to view events as a police officer under the circumstances should have "reasonably perceived them". Sevigny v Dickicy, 840 6F. 2d 953, 957 (4th Cir. 1988). His brief further recognizes the latitude afforded to police conduct is inescapably influenced by the need for prompt action in the interest of personal or public safety. Taylor v Farmer, 13F. 3d 117, 121 (4th Cir. 1993). Where counsel and I differ is that I would submit to this Court that the officers were acting with good faith upon very specific information provided to them by a trusted CI that ultimately proved to be precisely correct. Moreover, we would again stress that a person in the midst of the general public carrying an unlicensed handgun whose intent is unknowable by police officers arriving on the scene clearly presents the need for "prompt actions in the interest of personal or public safety".

---

[1] We would submit to the Court that the search of the plaintiff was also justified by the exigent circumstances presented by the officer's knowledge that an individual precisely matching his description was located in a crowded, public place of accommodation and in possession of an unregistered handgun. See United States v Rohrig, 98F. 3d. 1506, 1521-1522 (1996).

5

## MONELL LIABILITY

Plaintiff's counsel does not even bother trying to point to any facts supporting a finding that the City "failed to train or properly supervise" its officers or that the detectives in question were acting in accord with a specific policy or custom implemented by the City of Trenton in allegedly conducting the search and subsequent arrest and prosecution of the plaintiff. The reason for this is simple; there are none. Plaintiff's counsel's reference to glitches in the Information Technology System utilized by the City of Trenton Police Department on the date in question and the manner in which it "rewards" confidential informants.[2] It falls woefully short of providing the basis for a claim under Monell v. Department of Social Services, 436 U.S. 658-691 (1978). In fact, neither of these things has anything to do with the plaintiff's stop and subsequent prosecution for his now admitted illegal possession of an unregistered handgun on the night in question. Consequently, we would submit that there is no basis for a claim against the City of Trenton herein.

## STATUTE OF LIMITATIONS

Defendants' entire argument with regard to the Statute of Limitations is predicated upon his assertion that the malicious prosecution of his client constituted a continuing violation of plaintiff's rights; however, plaintiff's Amendment of the Complaint was done specifically to, among other things, dismiss his client's claim for Malicious Prosecution against the defendants herein. Indeed, we included the argument only because that portion of the Brief been dictated before plaintiff's counsel took that action and for the sake of completeness. The simple fact is that the Amended Complaint now contains no claim for "malicious prosecution".

---

[2] *A practice, if we are to believe what we see on television and in the movies and read in the newspapers is commonplace in police departments across the country.*

6

Even if it did, it is clear that there are other grounds upon which such a claim must be dismissed.  Specifically, it is well recognized threat defendants may escape liability in a Malicious Prosecution claim, even where plaintiff is able to demonstrate that they acted maliciously and without probable cause in instituting that prosecution, by showing that the plaintiff was in fact guilty of the offense with which he was charged.  See Hector v Watt, 235F. 3d 154-156 (3d Cir. 2000).  As plaintiff has conceded his guilt here, counsel's claim of a "continuing violation of plaintiff's rights" is not persuasive.

Plaintiff's counsel offers no opposition to dismissal of the Amended Complaint on Statute of Limitations grounds for the claims that were asserted therein; namely the alleged violation of his Fourth Amendment right against unlawful search and seizure pertaining to the search itself, and his "wrongful arrest" resulting from the officer's location of an unregistered firearm on his person during the course of his search.  It is undisputed that both of these claims were known to the plaintiff on that night, and, in fact, that he taunted the Detective in question at the police station that night indicating that they had no "Probable Cause" for his search and arrest and he would be walking on all charges.  Plaintiff was, thereafter, the motivating force behind the motion to Suppress ultimately resulting in the suppression of the evidence and dismissal of all charges against him.  As such, it is clear that the causes of action alleged in the Amended Complaint *accrued on May 2, 2009*, the night of plaintiff's arrest.  As plaintiff did not file the initial Complaint until October 28, 2011, and the Amended Complaint until August of 2012, it is respectfully submitted that his claims must be dismissed as falling outside the boundary of the applicable Statute of Limitations.

7

## **CONCLUSION**

For all of the foregoing reasons, we would respectfully submit that Defendants' motion for summary judgment must be granted and all claims against them dismissed with prejudice and without costs.

           **PARKER McCAY P.A.**
           Attorneys for Defendants, City of Trenton,
           Trenton Police Department and Kenneth Lugo


           By:   */s/ J. Brooks DiDonato*
                  J. BROOKS DIDONATO, ESQUIRE

Dated: December 18, 2012