**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GUY WILLIAMS, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 11-6352 (MAS) (TJB) |
| CITY OF TRENTON, *et al.*, | : MEMORANDUM OPINION |
| Defendants. | : |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants'[1] Motion for Summary Judgment filed on November 2, 2012. (Defs.' Mot., ECF No. 26.) This motion seeks dismissal of Plaintiff Guy Williams's ("Plaintiff") Complaint in full. Plaintiff filed Opposition on December 3, 2012. (Pl.'s Opp'n, ECF No. 28.) Defendants filed a Reply on December 18, 2012. (ECF No. 30.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78. For the reasons stated below, and for other good cause shown, the Defendants' Motion is GRANTED and Plaintiff's case is DISMISSED with prejudice.

I.  **Introduction and Factual Background**

Plaintiff Guy Williams is suing Defendants for various civil rights claims. (Compl. ¶¶ 30-42.) Plaintiff argues that Defendant Detectives unreasonably and without probable cause

---

[1] The docket currently only lists three Defendants: City of Trenton ("Trenton"), Trenton Police Department, and Detective Kenneth Lugo. The Amended Complaint, however, also lists a Detective Sheehan Miles. (ECF No. 26-5.) This discrepancy is irrelevant to disposition of this motion and case.

searched and seized him after receiving information from an anonymous tip linking Plaintiff to criminal activity. (*Id.* ¶¶ 11-22.)

The following facts are undisputed. A Confidential Informant ("CI") communicated to Detective Miles that there was a suspect walking with a gun "on the 500 block of Hamilton Avenue in Trenton." (Defs.' Mot. 1.) The CI described the suspect as "a black male wearing jeans, an orange hat with the letter H on it, and a long sleeved orange shirt with a white tee shirt over it." (*Id.*) Detective Miles then called Detective Lugo and told him the description he had received from the CI, as well as information stemming from a second call from the CI explaining that the suspect had just entered a liquor store on Hamilton Avenue near Chambers Street. (*Id.*) After obtaining a visual identification of the suspect, the detectives observed him enter the Food King Chinese Restaurant. (*Id.*) Detectives Franicevich and Lugo then entered the restaurant and noted that the suspect, who would later be identified as the Plaintiff, matched the description given by the CI "to a T." (*Id.*) (internal quotations omitted). The detectives then each took hold of one of the suspect's arms and escorted him out of the restaurant. (*Id.*) After Detective Lugo completed a "pat-frisk" of the Plaintiff, he found a .22 caliber pistol in his pocket. (Compl. ¶ 15.) Plaintiff was then arrested and charged with "Unlawful Possession of Weapons (handgun) in violation of [N.J. Stat. Ann.] 2C:39-5B and Certain Persons Not To Have Weapons (Felon) in violation of [N.J. Stat. Ann.] § 2C:39-7B." (Defs.' Mot. 1.)

Plaintiff could not make bail and was held in Mercer County Jail for over two years. (Compl. ¶ 18); (Defs.' Mot. 4.) At his trial, Plaintiff successfully moved to suppress the evidence of the firearm because Defendants allegedly did not have probable cause to conduct a search and seizure of his person. (*Id.* ¶¶ 20-21.) The charges against him were subsequently dropped. (Defs.' Mot. 2.) Plaintiff now alleges that as a result of his being imprisoned for two years and being the

subject of an illegal search and seizure he suffers from fear, mental anguish, emotional suffering, and a loss of wages. (Compl. ¶¶ 27-29.) He is suing to recover compensatory damages as well as punitive damages.

Defendants argue that the applicable Statute of Limitations bars the Plaintiff's claims as they were brought more than two years after the causes of action began to accrue. (Defs.' Mot. 7.) Defendants further argue that probable cause existed at the time of the search and seizure because the CI's qualifications are of the acceptable level articulated in *Illinois v. Gates* and as such, Plaintiff cannot state a claim for Wrongful Arrest. 462 U.S. 213, 230-31 (1983) (holding that a "totality of the circumstances" approach including taking into consideration the informant's veracity, reliability, and basis of knowledge is to be used in determining whether an anonymous tip can establish probable cause); (Defs.' Mot. 14).

Defendants also argue that the Detectives' apprehension of the Plaintiff did not constitute a *de facto* arrest but rather a *Terry* stop; therefore, Detectives Franicevich and Lugo only needed reasonable suspicion as opposed to probable cause. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968) (holding that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot... he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons"); (Defs.' Mot. 18).

Defendants next argue that the Doctrine of Qualified Immunity insulates Detectives Miles and Lugo from civil liability arising from this matter, asserting that the Detectives' conduct did not clearly violate established constitutional or statutory rights of which a reasonable officer would have been aware. (Defs.' Mot. 20.) Next, Defendants argue that the City of Trenton is entitled to Judgment as a Matter of Law because Plaintiff fails to allege any specific

3

facts suggesting that the City of Trenton failed to train or supervise any of its employees in such a way as to establish a *Monell* claim. *See generally Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978); (*Id.* at 23). Finally, Defendants argue that because the Plaintiff's § 1983 claims fail, so too must his State Constitutional claim because New Jersey Courts typically analyze § 1983 claims and State Constitutional claims together. (*Id.* at 24.)

## II. Analysis

Section 1983 actions in New Jersey must be brought "within two years of the accrual of the cause of action." *O'Connor v. City of Newark*, 440 F.3d 125, 125-127 (3d Cir. 2006) (quoting *Brown v. Foley*, 810 F.2d 55, 56 (3d Cir. 1987); *see also Cito v. Bridgewater Twp. Police Dep't.*, 892 F.2d 23, 24 (3d Cir. 1989). The limitations period starts running at "the time when the plaintiff kn[e]w or ha[d] reason to know of the injury which is the basis of the § 1983 action." *Genty v. RTC*, 937 F.2d 899, 919 (3d Cir. 1991) (citing *Deary v. Three-Unnamed Police Officers*, 746 F.2d 185, 197 n.16 (3d Cir. 1984)). "In cases of false arrest, the plaintiff will be aware of both his injury, *i.e.,* the wrongful arrest, and those responsible for that injury, *i.e.,* the police, at the time of arrest, therefore no delay in the accrual of the cause of action is necessary." *Rolax v. Whitman*, 175 F. Supp. 2d 720, 727 (D.N.J. 2001).

The Statute of Limitations for § 1983 claims seeking damages for wrongful arrest in violation of Fourth Amendment rights "begins to run at the time the claimant becomes detained pursuant to legal process." *See Wallace v. Kato*, 549 U.S. 384, 397 (2007). That the Plaintiff was jailed on the night of his arrest suggests that the Statute of Limitations of his Wrongful Arrest Claim began running on May 2, 2009.

Defendants argue that the § 1983 causes of action along with the New Jersey Constitutional Claim began accruing on May 2, 2009, the night of the Plaintiff's arrest. This is

especially so because Plaintiff testified that he was aware that his arrest was allegedly unlawful the very night that he was taken into custody. (Williams Dep. Tr. 72:7-12, ECF No. 26-3.) Specifically, Plaintiff testified, "I had told [the arresting officers] that they were wrong for arresting me and that they were not getting a conviction and I would be going home." *Id.* Plaintiff explained that he based this opinion on "[t]he fact that I knew they had no probable cause for stopping me." *Id.* The Plaintiff did not file the initial complaint until October 28, 2011, over two years after the night of his arrest. (Defs.' Mot. 9.)

In response, Plaintiff argues that the Statute of Limitations was tolled due to the continuing violations doctrine. (Pl.'s Opp'n 16.) The continuing violations doctrine is an "equitable exception to the timely filing requirement." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995). The doctrine may only be employed if the plaintiff can establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." *Id.* at 755; (quoting *Jewett v. Int'l Tel. and Tel. Corp.*, 653 F.2d 89, 91 (3d Cir. 1981)). With regard to the applicability of the continuing violations doctrine, the *West* court also noted that:

> The Third Circuit recognizes that courts should consider at least three factors: (i) subject matter- whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (ii) frequency- whether the acts are recurring or more in the nature of isolated incidents; and (iii) degree of permanence- *whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights* and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *The consideration of "degree of permanence" is the most important of the factors.*

*Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (emphasis added) (citing *West*, 45 F.3d at 755 n.9.) While generally applied in employment discrimination claims, the doctrine has been used in a procedural due process claim brought under § 1983. *See Centifanti v. Nix*, 865 F.2d

5

1422, 1432-33 (3d Cir. 1989) (holding that because the plaintiff was suffering a continuing wrong, the action was not barred by state statute of limitations).

Plaintiff asserts that Detectives Lugo and Miles took actions subsequent to his arrest in continuing violation of Plaintiff's rights; specifically, both Detectives testified at hearings against the Plaintiff. (Pl.'s Opp'n 16.) This argument is not persuasive because Plaintiff does not, nor can he, provide authority to show that merely testifying at a suppression hearing or before a Grand Jury would itself be a violation of Plaintiff's Fourth Amendment rights.

The Court concludes that any action taken by Detectives Lugo or Miles after Plaintiff's arrest did not constitute a violation of the "same type" as the rule from *West* contemplates. Any § 1983 action leading to a wrongful incarceration will undoubtedly involve the plaintiff being subject to the criminal process. This process typically includes the plaintiff being subject to testimony against him or her, as well as temporary imprisonment. Rather, Plaintiff's arrest is the event that had the degree of permanence required to "trigger the [Plaintiff's] awareness of the need to assert [his] rights." *West*, 45 F.3d at 755 n.9. In fact, Plaintiff's own testimony demonstrates that Plaintiff was aware of the fact that he did not consider his arrest to be predicated upon probable cause *at the time of his arrest*. No clearer indication that Plaintiff was aware of his cause of action at the moment of his arrest can be provided.

*Mata v. Anderson* is analogous to the case at bar. 635 F.3d 1250 (10th Cir. 2011). In *Mata*, the plaintiff sued a law enforcement officer for several civil rights violations. *Id.* at 1252. The plaintiff argued that although the initial incident that led to his lawsuit had occurred over two years prior, and would ordinarily be barred by the Statute of Limitations, the defendant's testimony and participation in the criminal proceedings against him allegedly constituted continuing violations of his civil rights. *Id.* at 1253. In rejecting this argument, the Tenth Circuit

held that "assuming the continuing violation doctrine applies to § 1983 claims, the doctrine is triggered by continual unlawful acts, not by continual ill effects from the original violation." *Id.* (citing *Parkhurst v. Lampert*, 264 Fed. App'x 748, 749 (10th Cir. 2008)).

As in *Mata*, the continuing violations alleged by Plaintiff here are his imprisonment resulting from the May 9th arrest and Detectives Lugo and Miles's testimony against him. (Pl.'s Opp'n 16.) These do not constitute separate acts that violate the Plaintiff's rights, rather, these are the natural and ordinary results that flow from the initial unconstitutional act that Plaintiff alleges. Plaintiff, therefore, cannot benefit from the continuing violations doctrine, and as such, the Statute of Limitations requires that this matter be Dismissed with prejudice.

### III. Conclusion

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendants' Motion for Summary Judgment is GRANTED. Plaintiff's Complaint is DISMISSED WITH PREJUDICE. An Order consistent with this Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: June 14th, 2013